IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | Criminal No. 2:24-cr-135 - 1 |
| v. | Hon. William S. Stickman IV |
| CHARLES WILLIAMS, JR., | |
| *Defendant*. | |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

On June 11, 2024, a grand jury in the Western District of Pennsylvania returned a five count indictment against Defendant Charles Williams, Jr. ("Williams"), charging him with three bank robberies,[1] possession of a firearm in furtherance of a violent felony, and possession of a firearm by a convicted felon. (ECF No. 1). Pending before the Court is Williams' Motion to Suppress Statement by Defendant and any Fruits Thereof. (ECF No. 30). The Court held an evidentiary hearing on August 27, 2025 (ECF No. 48), and the parties submitted post-hearing briefs (ECF Nos. 52 and 53). Williams seeks to suppress his incriminating statements from a December 15, 2023, interview with law enforcement. The parties' dispute hinges on an exchange approximately an hour and a half into the interview. Williams claims that he said, "I need to see a lawyer," when asked about one of the alleged bank robberies. The Government

---

[1] The first robbery (Count One) occurred on October 16, 2023, at First Commonwealth Bank in Forest Hills, Pennsylvania, which is located in Allegheny County. The second robbery (Count Two) occurred on November 17, 2023, at First National Bank in Irwin, Pennsylvania, which is located in Westmoreland County ("First National Bank"). The third robbery (Count Four) occurred on December 14, 2023, at Key Bank in North Huntingdon, Pennsylvania, which is located in Westmoreland County. (ECF No. 1, pp. 1-4).

contends that Williams said, "I used to live out here," and that Williams never mentioned a lawyer, much less invoked the right to counsel during the entirety of the interview. Although the interview is recorded, the parties interpret Williams' statement differently. The Court carefully listened to the recording of the interview as well as the testimony presented at the evidentiary hearing. It finds that Williams said "I used to live out here" twice. As such, there is no merit to Williams' motion and it will be denied.

## I.   STANDARD OF REVIEW

"As a general rule, the burden of proof is on the defendant who seeks to suppress evidence. However, once the defendant has established a basis for his motion ... the burden shifts to the government." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citations omitted). "A defendant 'satisfies that burden if he alleges that he was subjected to custodial questioning without the benefit of *Miranda* warnings,' at which point the government must 'prove by a preponderance of the evidence that there was no custodial interrogation implicating *Miranda*, there was some exception to the *Miranda* rule, or ... [the defendant] ... was properly Mirandized and waived his rights.'" *United States v. Valenta*, Crim. No. 15-161, 2017 WL 2131375, at *4 (W.D. Pa. May 17, 2017) (quoting *United States v. Tudoran*, 476 F. Supp. 2d 205, 216 (N.D.N.Y. 2007) (citation omitted)).

*United States v. Pride*, Criminal No. 16-68, 2019 WL 2866843, at *5 (W.D. Pa. July 3, 2019).

## II.   ANALYSIS[2]

On December 15, 2023, the Pennsylvania State Police and North Huntingdon Township Police obtained an arrest warrant for Williams and a search warrant for his apartment. Williams was taken into custody that day outside of his apartment building. Pennsylvania State Police

---

[2] Whether Williams' motion has merit is dependent on the Court's determinations of fact. This section encompasses the Court's findings of fact, credibility determinations, and legal analysis. When ruling on a suppression motion, the Court takes on the role of the finder of fact and thus "is responsible for assessing the credibility of the testifying witnesses, weighing the evidence, and reaching any 'inferences, deductions and conclusions to be drawn from the evidence.'" *United States v. Cole*, 425 F. Supp. 3d 468, 473 (W.D. Pa. 2019) (quoting *United States v. Harris*, 884 F. Supp. 2d 383, 387 n.2 (W.D. Pa. 2012)).

Trooper Shane McClelland ("Trooper McClelland") and North Huntingdon Township Police Department Detective Sergeant Mark William Hamilton ("Detective Sergeant Hamilton") interviewed Williams at the North Huntingdon Township Police Department station for over two hours. The interview was video and audio recorded.[3] (ECF No. 48, pp. 11-12, 14); (Government Exhibit ("Ex.") 1).  After carefully reviewing the recorded interview and the testimony of officers, which the Court finds credible, the Court holds for the following reasons that Williams never invoked his right to counsel at any time during the interview.

To safeguard an individual's Fifth Amendment privilege against self-incrimination, the United States Supreme Court has held that the government may not introduce statements made by an individual who is subject to "custodial interrogation" unless he first has been given his *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 445 (1966).  However, a suspect may waive his *Miranda* rights, "provided the waiver is made voluntarily, knowingly and intelligently."  *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989) (quoting *Miranda*, 384 U.S. at 444).  A waiver is voluntary, knowing, and intelligent when it is "the product of a free and deliberate choice rather than intimidation, coercion or deception" and is made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

The Court holds that Williams was properly advised of his *Miranda* rights and that he knowingly and voluntarily waived them.  In addition to explicitly stating that he agreed to speak

---

[3] The Government submitted the video recording for processing by the Middle Atlantic-Great Lakes Organized Crime Law Enforcement Network (MAGLOCLEN), requesting audio processing ("cleaned up" audio). (ECF No. 42). The parties do not dispute that "an analyst from MAGLOCLEN processed the video files and was able to improve the audio quality by eliminating some of the background interference and increasing the volume of the voices in the video." (ECF No. 45, p. 2). The Court concurs with the Government that: [t]he audio recording of [ ]Williams' interview, even after being forensically enhanced, is imperfect." (ECF No. 52, p. 1).

with the officers, Williams signed a waiver form. (ECF No. 48, pp. 11-12, 20-22); (Exs.1 and 1.3 at 14:12:44-14:15:37); (Ex. 2).

Williams seeks to suppress his incriminating statements on the basis that he invoked his right to counsel approximately an hour and a half into the interview.[4] "[A]fter a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis v. United States*, 512 U.S. 452, 461 (1994). The invocation, however, must be clear and unambiguous before officers are required to cease questioning. *Id.* at 461-62. "Although a suspect need not 'speak with the discrimination of an Oxford don' ... he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459 (internal citation omitted). Invocations that are "ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel ..." then interrogation may continue. *Id.*

The following exchange took place over an hour and a half into the interview of Williams, the emphasized portion of which forms the basis of the parties' dispute:

| | | |
|---|---|---|
| 15:54:01 | McClelland: | So how did you get [to First National Bank]? |
| 15:54:03 | Williams: | ***I used to live out here.*** |
| 15:54:05 | McClelland: | What's that? |
| 15:54:06 | Williams: | ***I used to live out here.*** |
| 15:54:07 | McClelland: | Did you? You used to live out here? |
| 15:54:08 | Hamilton: | Oh, so that's how you knew there was state police [there or area]. (laughing) |
| 15:54:11 | McClelland: | (laughing) You're fucking jacking the shit out of us! You're jacking the shit out of us! |

---

[4] It is Williams' burden to prove that he clearly invoked his right to counsel. *See United States v. Green*, No. CR 19-84, 2022 WL 574864, at *7 (W.D. Pa. Feb. 25, 2022) ("The burden of persuasion on the discrete issue whether defendant clearly invoked his *Miranda* rights is on the defendant." (citations omitted)).

(Ex. 1); (Ex. 1.2); (ECF No. 45, p. 3) (emphasis added). Williams claims that the statement that Court interprets as "I used to live out here" was actually "I need to see a lawyer."

Having listened to the statement multiple times, the Court finds that Williams said "I used to live out here" twice. (Exs. 1 and 1.2 at 15:54:03 and 15:54:06). Williams' statements arose from broader questioning about how he chose the First National Bank as a target and his understanding that the area was patrolled by Pennsylvania State Police, which may have a longer response time than local authorities. After Williams stated, "I used to live out here," Trooper McClelland responded, "Did you? You used to live out here?" Detective Sergeant Hamilton responded: "so that's how you knew there was state police." Williams' statement, "I used to live out here," fits into the context of the general line of questioning and the specific exchange at issue. The officers' responses make no sense in response to the alleged statement, "I need to see a lawyer." Their responses are directly responsive and on-point to "I used to live out here."

The Court's interpretation of the disputed portion of the interview would alone be dispositive of the motion. But the context of Williams' statements and the credible testimony adduced at the evidentiary hearing bolsters the Court's interpretation of the disputed portion. In other portions of the interview, the officers and Williams discussed how Williams knew from living in an area near the First National Bank that police coverage was provided by the Pennsylvania State Police, and that their response time would be longer. (*See e.g.*, Ex. 1 at 15:18:15 (talking about state police response time as the reason Williams picked the First National Bank); 15:59:50 (conversation about how Williams knew the area he used to live in was state police territory because they took an hour or two to respond to an argument he had with his wife); 16:04:00 (discussing how Williams picked the First National Bank due to the lengthy state police response time)).

5

Further, the officers credibly testified that Williams never requested an attorney. Trooper McClelland testified that Williams did not ask for an attorney. (ECF No. 48, p. 16). He testified that during his interviews, if a suspect invokes their rights and asks for an attorney, it is his practice to then end the interview. (*Id.* at 10-11). Trooper McClelland testified that Williams never stopped the interview or refused to answer questions, and he never asked for an attorney. (*Id.* at 12).

Likewise, Detective Sergeant Hamilton credibly testified that his typical practice when a suspect asks for an attorney during an interview is to repeat what they said or "ask them directly so I explicitly know what they're requesting." (*Id.* at 19). He further explained, "[m]y way of clarifying, I ask directly, what did you say? What are you requesting?" (*Id.*). After doing that, he would cease all questioning. (*Id.* at 27). As to his interview of Williams, he recalled that Williams never asked for an attorney. (*Id.* at 22). Detective Sergeant Hamilton testified that during the portion of the interview at issue, Williams did not ask for an attorney. Instead, Williams said "I used to live out here." (*Id.* at 23-24, 27). At the end of an interview, Detective Sergeant Hamilton always asks the same two questions: (1) "Is there anything you'd like to talk about that we haven't discussed and you feel is important?"; and (2) "Do you feel like you were treated fairly today?" (*Id.* at 25-26). He asked these questions of Williams, who indicated that he was treated fairly. (*Id.* at 26); (Exs. 1 and 1.4 at 16:10:35-16:11:28).

Based on its interpretation of the recording, as well as the testimony offered at the evidentiary hearing, the Court finds as to the disputed portion of the interview that Williams never said, "I need to see a lawyer." Williams actually stated twice, "I used to live out here." (Exs. 1 and 1.2 at 15:54:03 and 15:54:06). The Court's examination of the entirety of the

6

recorded interview reveals that Williams never invoked his right to counsel or mentioned a lawyer. No violation of Williams' *Miranda* rights occurred.

### III.  CONCLUSION

For these reasons, Williams' motion will be denied by Order of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

__10-24-25_____
Dated